UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASIA KENOSHA-CHARI FARLEY,

  Plaintiff,

v.

INTEGON NATIONAL INSURANCE
COMPANY,

  Defendant.

Case No. 17-10874
Honorable Laurie J. Michelson
Magistrate Judge David R. Grand

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [27]**

Asia Kenosha-Chari Farley was in a car accident in April 2016 that resulted in back injuries. Farley brought suit against the driver who hit her as well as her insurance company, Integon National Insurance Company, for refusing to fully reimburse her for related medical expenses. Farley has since settled with the driver. (R. 29.) Integon now seeks summary judgment, contending that the remaining benefits being sought are not reimbursable chiropractic services. The matter is fully briefed, (R. 34; 35), and the Court heard argument on June 21, 2018. For the following reasons, the Court grants in part and denies in part Integon's motion.

**I.**

On April 22, 2016 Farley was driving on Interstate Highway 75 when another driver drifted into her lane, striking the rear passenger side of Farley's car. (PageID.11.) Farley sustained injuries to her back, for which she received a variety of chiropractic services. (PageID.451.)

Farley sued both the driver and her insurance company, Integon, seeking to recover personal injury protection (PIP) benefits. Against Integon, she seeks compensation for her medical expenses, lost income, travel expenses for medical care, attendant care, and expenses to cover

services she would have performed for herself or her dependents. (PageID.14.) Integon paid over $15,000 for medical expenses, (R. 27-2), but refused to pay for three chiropractic services: mechanical traction, the application of hot and cold packs, and extraspinal manipulation. (PageID.366.)

Integon now moves for summary judgment asserting that the three contested medical expenses are not reimbursable as a matter of law. It also asks the Court to deem her requests to admit admitted (thereby eliminating Farley's remaining damages claims) and to rescind her policy because of material misrepresentations. (R. 27.)

## II.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may discharge its initial summary judgment burden by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to Farley. *See Matsushita*, 475 U.S. at 587 (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

# III.

Integon argues that Michigan PIP law does not require reimbursement for Farley's mechanical traction, hot- and cold-pack application, or extraspinal manipulation treatments.

To decide whether Integon is correct, the Court must determine the permissible scope of PIP coverage. Generally, PIP covers "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws. § 500.3107 (2013). But in Michigan Compiled Laws § 500.3107b, the legislature created a separate section of excludable expenses. One of those excluded expenses is for chiropractic services, "unless the service was included in the definition of practice of chiropractic under . . . MCL 333.16401, as of January 1, 2009." *Id.*; *see also Measel v. Auto Club Grp. Ins. Co.*, 886 N.W.2d 193, 197 (Mich. Ct. App. 2016). The definition of the "practice of chiropractic" as of January 1, 2009 was the version of Michigan Compiled Laws § 333.16401 last amended in 2002. That definition is as follows:

> 'Practice of chiropractic' means that discipline within the healing arts which deals with the human nervous system and its relationship to the spinal column and its interrelationship with other body systems. Practice of chiropractic includes the following:
>
> *(i)* Diagnosis, including spinal analysis, to determine the existence of spinal subluxations or misalignments that produce nerve interference, indicating the necessity for chiropractic care.
> *(ii)* A chiropractic adjustment of spinal subluxations or misalignments and related bones and tissues for the establishment of neural integrity utilizing the inherent recuperative powers of the body for restoration and maintenance of health.
> *(iii)* The use of analytical instruments, nutritional advice, rehabilitation exercise and adjustment apparatus regulation by the rules promulgated by the board pursuant to section 16423, and the use of x-ray machines in the examination of patients for the purpose of locating spinal subluxations or misaligned vertebrae of the human spine. The practice of chiropractic does not include the performance of incisive surgical procedures, the performance of an invasive

>procedure requiring instrumentation, or the dispensing or prescribing of drugs or medicine.

Mich. Comp. Law § 333.16401(1)(b) (2002) (amended by § 333.16401 (2010)).

Farley disagrees that PIP reimbursement is limited to services that fall within the statutory definition of "practice of chiropractic." (PageID.713.) Instead, Farley contends that she only needs to show what is generally required for PIP coverage pursuant to § 500.3107—that the payment sought is for "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." Mich. Comp. Laws. § 500.3107 (2013). As support, she cites *Zigmond Chiropractic, P.C. v. Auto Club Ins. Ass'n*, 2011 WL 2694614, at *4 (Mich. Ct. App. July 12, 2011).

But Farley ignores the significant amendments made to § 500.3107b. Again, in 2009, the Michigan Legislature amended § 500.3107b to explicitly *exclude* PIP reimbursement for *all* chiropractic services *unless* a service fell within the statutory definition of practice of chiropractic as of January 1, 2009. Before that amendment, § 500.3107b only excluded reimbursement for "[t]he use of therapeutic sound or electricity, or both, for the reduction or correction of spinal subluxations in a chiropractic service." Because the services at issue in *Zigmond* were rendered prior to 2010, when the 2009 amendments went into effect, the case was not governed by the new statutory scheme. *Id*. at *2. *Zigmond* does not state the current law and does not bind the Court.

Given the 2009 amendments, the Court finds that *Measel* correctly states current law, i.e., that only those services that fall within the definition of "practice of chiropractic" are required to be reimbursed under Michigan PIP law. *See* 886 N.W.2d at 197.

### A.

So the Court now moves to determine whether the contested services fall within the January 1, 2009 definition of "practice of chiropractic."

Integon first contests the coverage of Farley's mechanical-traction services. Mechanical traction falls within the definition of practice of chiropractic as an "adjustment apparatus" when the traction is used to correct a subluxation or misalignment, but not if it is used for therapeutic purposes. *See Hofmann v. Auto Club Ins. Ass'n*, 535 N.W.2d 529, at 544 (Mich. Ct. App. 1995).[1] Integon asserts that Farley's mechanical traction treatment was done for therapeutic purposes. (PageID.364.) As support, Integon points to the billing code used for the mechanical traction treatment which described the treatment as a "modality that does not require direct (one-on-one) patient contact." (PageID.472.) "Modality" is further defined as a "physical agent applied to produce therapeutic changes to biologic tissue." *Id*. So, in Integon's view, "mechanical traction is always therapeutic in nature and outside the scope of chiropractic." (PageID.364.)

At the hearing, Integon offered a second reason for why the mechanical traction provided to Farley does not require PIP reimbursement. It pointed to a one-page treatment plan created by Farley's chiropractor that listed "facet joint irritation" as a purpose of the mechanical traction, which Integon interprets to indicate treatment outside of the spine. (PageID.484.) And treatment of non-spinal areas is not covered, *Measel*, 886 N.W.2d at 202–03.

The record before the Court does not warrant summary judgment in Integon's favor. As for the "facet joint irritation" argument, facet joints are the connections between the bones *of the spine*. *Facet Joint Syndrome*, cedars-sinai.edu, https://www.cedars-sinai.edu/Patients/Health-Conditions/Facet-Joint-Syndrome.aspx (last visited June 25, 2018). Thus, based on Farley's treatment plan, it seems the mechanical traction was conducted to alleviate issues of the spine. The treatment plan also described "mechanical traction to decrease intradiscal pressure, decrease facet

---

[1] While the *Hofmann* decision pre-dates the 2002 amendments to Mich. Comp. Laws § 333.16401, the amendments did not materially change the portion of the statute the court used in determining what did or did not fall within the statutory definition of the practice of chiropractic.

joint irritation and decrease pain." (PageID.484.) While Integon's counsel acknowledged at the hearing that "intradiscal pressure" involves the spine, Integon does not explain how "decreas[ing] intradiscal pressure and facet joint irritation", (PageID.484), is plainly not "correcting a subluxation or misalignment of the vertebral column or related bones and tissues." *Hofmann*, 535 N.W.2d at 544. Left with questions of how to reconcile the information from the treatment plan and the billing code, the Court will not find that the treatment is not covered by the statute as a matter of law just because the billing code states that it was applied for "therapeutic" changes.[2] *See Celotex Corp.*, 477 U.S. at 325.

Integon next asks the Court to find that the use of hot and cold packs are not reimbursable. As support, Integon relies primarily on *Hofmann*, in which the plaintiff asserted that the hot and cold packs were "rehabilitation exercises" and therefore required reimbursement. 535 N.W.2d at 543. The Michigan Court of Appeals found, however, that the "administration of heat and cold is done for therapeutic purposes and does not involve exercise," and therefore cannot be seen as a rehabilitation exercise. *Id*. Further, the record in that case did not suggest that the administration of heat and cold packs fell under any other statutory category of "practice of chiropractic," such as analytical instruments, nutritional advice, adjustment apparatus, and x-rays. *Id*.

Similarly, here, Farley's treatment plan stated that the use of hot or cold packs was "to decrease inflammation and decrease pain." (PageID.484.) And the billing code for this treatment

---

[2] Integon also makes a passing argument that because the service was billed in a category that suggests the chiropractor did not have physical contact with the patient, the treatment must be passive and therefore falls outside of the statute. (PageID.364.) Passivity is a concern if the treatment is to be considered a "rehabilitative exercise." *See Hofmann*, 535 N.W.2d at 544. *Hofmann* found that traction is more appropriately considered an "adjustment apparatus" if it is done for the purpose of correcting a subluxation or misalignment of the vertebral column. *Id*. Regardless, Integon has not explained why the treatment should be deemed "passive" just because the chiropractor is not in physical contact with the patient.

contained the following explanation: "application of a modality to 1 or more areas; hot or cold packs." (PageID.472.) Thus, as in *Hofmann*, the record here supports a finding that the treatment of hot and cold packs would not fall under any covered category. Farley does not attempt to rebut the reasoning used in *Hofmann* or raise any factual issues that would put that finding in question. The Court will therefore find that Farley's use of hot and cold packs is not reimbursable as a matter of law.

Integon lastly asserts that the extraspinal manipulation treatment is not reimbursable because treatment of nonspinal areas is outside the scope of chiropractic practice. The Court agrees. *See Measel*, 886 N.W.2d at 202–03. Farley's treatment plan described this treatment as "extraspinal [chiropractic manipulative treatment] to correct *extremity* subluxations, decrease pain and improve function." (PageID.484) (emphasis added). And Farley's treatment was billed as "CMT extraspinal," which is defined as regions of the head, lower extremities, upper extremities and abdomen. (PageID.475.) Chiropractic manipulative treatment, by its very name, is a treatment. And nothing in the description in the treatment plan, nor the billing code, suggests anything other than the treatment of non-spinal areas. Further, at the hearing, Farley did not identify any genuine issue of material fact regarding this treatment. The Court therefore finds that the extraspinal manipulation does not fall within the definition of practice of chiropractic as of January 2009 and therefore Integon does not need to reimburse Farley for those treatments.

**B.**

Integon also asks the Court to deem the requests to admit as admitted pursuant to Federal Rule of Civil Procedure 36. The Court ruled on this issue during the oral argument. It provides additional reasoning here.

The parties entered a stipulated order for Farley to produce all written discovery by August 4, 2017, including responses to requests to admit. (R. 14.) Farley did not comply. So on August, 10, 2017, Integon filed a motion to dismiss. (R. 17.) A week later, Farley filed her answers to the RFAs and certificate of service with the Court. (R. 18.) While the responses were struck as improperly filed discovery, *see* E.D. Mich. L.R. 26.2, they were available to Integon. On August 21, 2017, Integon withdrew its motion. (R. 20.)

But Farley did file her responses late. A trial court has considerable discretion over whether to permit withdrawal of admissions. *Kerry Steel, Inc. v. Paragon Industries, Inc*., 106 F.3d 147, 154 (6th Cir. 1997). And while Farley did not file a formal motion to withdraw the admissions, the Court may infer such a request from her late denials. *See United States v. Petroff-Kline*, 557 F.3d 285, 293–94 (6th Cir. 2009). The Court's discretion should be exercised in light of Rule 36(b), which permits withdrawal "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b); *Freeman v. City of Detroit*, 274 F.R.D. 610, 613 (E.D. Mich. 2011). Permitting a withdrawal of admissions here would promote the presentation of the merits because what Integon seeks to have deemed admitted would vitiate Farley's case—they ask Farley to "please admit" that she is not claiming any unpaid wage loss, replacement services, attendant care services, medical bills, and medical mileage. (PageID.500.) Further, the Court does not find prejudice from the withdrawal. Integon withdrew its motion to dismiss after Farley responded to discovery and continued to litigate the case. The Court will deny Integon's request.

## C.

Integon lastly seeks to rescind Farley's policy based on a material misrepresentation: that at the time she obtained the policy, she represented she was living in Romulus, when in fact, she

was not. (PageID.368–71.) Integon also appears to claim that Farley's failure to report that she moved back to Detroit before the accident is a separate basis to rescind. *See id.*

An insurance company is entitled to rescind a policy if an insured makes a material misrepresentation in an insurance application. *Burton v. Wolverine Mut. Ins. Co.*, 540 N.W.2d 480, 481 (Mich. Ct. App. 1995) ("We have no dispute with the general proposition that an insurer may rescind a policy *ab initio* because of a material misrepresentation in the application for insurance."). A misrepresentation is material if the fact "substantially increas[es] the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium." *Key v. Pace*, 99 N.W.2d 547, 551 (Mich. 1959).

When Farley applied for insurance on February 2, 2015, she reported that she lived in Romulus. (PageID.416.) Integon asserts that Farley actually lived in Detroit at that time, and had she reported a Detroit address, her premiums would have been higher. (PageID.368; R. 27-10.) Integon cites the following as evidence that Farley was in fact living in Detroit: her vehicle registration, driver's license, 2015 tax return, and application for benefits after the accident list the Detroit address, she had title to the Detroit address, and she took out a mortgage on the Detroit address, which represented that the address was her principal residence. (PageID.369–70.)

Farley does not dispute that she had a residence in Detroit. She testified that she purchased the Detroit property back in 2009, but she only lived there intermittently. (PageID.379.) She further testified that at the time she applied for insurance, she was living with her boyfriend in Romulus (PageID.379, 416.) And that her stepsister and her seven children lived in the Detroit property. (PageID.379–80.) Farley also explained why certain documents list the Detroit address. Her driver's license contains the Detroit address because that was where she was living when she got

9

the license. (PageID.417.) And she also purchased her vehicle when she was living in the Detroit address. (*Id.*)

Thus, viewing the facts in the light most favorable to Farley, *see Redding*, 241 F.3d at 531, the Court finds that where Farley lived at the time of her insurance application is a genuine issue of material fact for the jury to resolve and Integon cannot rescind Farley's policy as a matter of law. *See Anderson*, 477 U.S. at 249.

Integon further asserts that Farley failed to report that, at some time prior to the accident, she moved back to Detroit and was living with her sister. As the sister was uninsured, this living arrangement would also have increased Farley's premiums. In support, Integon points to Farley's interrogatory responses and application for benefits, which state that she was living in Detroit at the time of the accident. (PageID.457, 508.) This indeed seems to suggest that Farley relocated after obtaining the policy and before the accident. But Integon does not fully develop this argument. Most significant, the insurance policy is not part of the summary judgment record. So the Court cannot determine whether and under what circumstances Farley would have to report a change in address. And any such requirement is not mentioned in the affidavit of the underwriter. (PageID.502–504.) Without any evidence about Farley's obligation to report a change in address, the Court is unable to evaluate whether any misrepresentation was made. Integon has not met its summary judgment burden for this claim.

**IV.**

For the foregoing reasons, Integon's motion for summary judgment (R. 27) is granted in part and denied in part as follows: Plaintiff's PIP claim for hot and cold packs and extraspinal

manipulation will be dismissed, while her entitlement to PIP benefits for mechanical traction as well as Integon's misrepresentation claim will not be dismissed.[3]

SO ORDERED.

                                             s/Laurie J. Michelson
                                             LAURIE J. MICHELSON
Dated: July 3, 2018                         U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 3, 2018.

                                               s/Keisha Jackson
                                               Case Manager

---

[3] The Court notes that Integon discussed Farley's claim for lost wages in the fact section of its motion, but provided no legal argument on this issue. (PageID.355–57.) Thus, Farley never responded to the issue. Farley's claim for lost wages is therefore not included in this opinion. Integon also asks for a setoff should the Court find that Farley is entitled to reimbursement. (PageID.366–67.) But the Court is not conclusively determining whether Farley is entitled to reimbursement. Nor did Integon bring a claim for set-off. This issue is therefore not appropriately addressed at this time, but can also be raised before the jury.